IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
February 25, 2003 Session

## DONALD McARTHUR CARVER v. STATE OF TENNESSEE

**Direct Appeal from the Circuit Court for Cocke County**
**No. 27,114 - III      Rex Henry Ogle, Judge**

---

**No. E2002-00297-CCA-R3-PC**
**July 15, 2003**

---

The petitioner appeals the denial of his petition for post-conviction relief. He contends that he accepted his plea bargain on the condition that he would serve his ten-year sentence in the county jail. No such agreement was contained in the plea agreement or announced in open court. However, the testimony is overwhelming that trial counsel gave assurances to the petitioner that, unless his medical condition changed or he was a discipline problem, he would be allowed to serve his ten-year sentence in the county jail. We conclude the advice and assurances given by trial counsel were erroneous, as contrary to the law. But for said advice and assurances, the petitioner would not have pled guilty. We reverse the post-conviction court's denial of relief, allow the petitioner to withdraw his guilty plea, and remand for new trial.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Reversed and Remanded**

JOHN EVERETT WILLIAMS, J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR. and ROBERT W. WEDEMEYER, JJ., joined.

Tim S. Moore, Newport, Tennessee, for the appellant, Donald McArthur Carver.

Paul G. Summers, Attorney General and Reporter; Peter M. Coughlan, Assistant Attorney General; Al C. Schmutzer, Jr., District Attorney General; and James B. Dunn, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

The petitioner, Donald McArthur Carver, contends that due to the ineffective assistance of his trial counsel, he did not enter a knowing guilty plea. Specifically, he claims that, but for the assurances trial counsel made that he would serve his ten-year sentence in the Cocke County Jail unless his medical condition worsened or he was a discipline problem, he would not have pled guilty.

Originally, the petitioner pled guilty on June 13, 2000, to possession of a Schedule II drug (cocaine) with the intent to resell, a Class B felony; possession of a Schedule VI drug (marijuana) with the intent to resell, a Class E felony; and possession of drug paraphernalia, a Class A misdemeanor. Pursuant to his plea agreement, the petitioner agreed to be sentenced as a Range I, standard offender, to ten years on the Class B felony, two years on the Class E felony, and eleven months, twenty-nine days on the Class A misdemeanor, with all sentences to run concurrently. On June 4, 2001, he filed a petition for post-conviction relief which the post-conviction court, after a hearing, denied. It is from this denial the petitioner now appeals.

After an evidentiary hearing, the post-conviction court found that no agreement was approved which would allow the petitioner to serve his ten-year sentence in the Cocke County Jail. On this point, we agree with the post-conviction court that neither the trial judge nor the District Attorney's office (each of which are indispensable to a plea agreement) knew of, discussed, or promised the petitioner that he could serve his ten-year sentence in the Cocke County Jail.

However, to the extent the post-conviction court's finding could be read to find that trial counsel never made assurances to the petitioner nor did the petitioner believe he would serve his ten-year sentence in the Cocke County Jail, we conclude the evidence preponderates against such a finding. We conclude that the advice and assurances given by trial counsel to the petitioner were erroneous and served as the cornerstone of the petitioner's decision to plead guilty. The petitioner's guilty plea was therefore entered involuntarily, and he is entitled to withdraw his guilty plea.

## Analysis

When a claim of ineffective assistance of counsel is made under the Sixth Amendment, the petitioner bears the burden of proving (1) that counsel's performance was deficient and (2) that the deficiency was prejudicial in terms of rendering a reasonable probability that the result of the trial was unreliable or the proceedings were fundamentally unfair. Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064, 80 L. Ed. 2d 674 (1984). This standard has also been applied to the right to counsel under Article I, Section 9 of the Tennessee Constitution. State v. Melson, 772 S.W.2d 417, 419 n.2 (Tenn. 1989). When a petitioner claims ineffective assistance of counsel in relation to a guilty plea, the petitioner must prove that counsel performed deficiently, and, but for counsel's errors, the petitioner would not have pled guilty but would have, instead, insisted upon going to trial. Hill v. Lockhart, 474 U.S. 52, 59, 106 S. Ct. 366, 370, 88 L. Ed. 2d 203 (1985).

In Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975), our supreme court required that the services be rendered within the range of competence demanded of attorneys in criminal cases. In reviewing counsel's conduct, a "fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." Strickland, 466 U.S. at 689, 104 S. Ct. at 2065; see Hellard v. State, 629 S.W.2d 4, 9 (Tenn. 1982).

The petitioner bears the burden of proving by clear and convincing evidence the factual allegations which would entitle the petitioner to relief. Tenn. Code Ann. § 40-30-210(f). This Court is bound by the post-conviction court's findings of fact unless the evidence preponderates against those findings. Fields v. State, 40 S.W.3d 450, 456-57 (Tenn. 2001).

The following are excerpts of testimony given by trial counsel at the post-conviction hearing:

Q. Okay. And did he have a concern about where he was going to serve his sentence?

A. Yes, he did. He was very concerned about remaining here in Cocke County. One of his primary concerns was his medical condition because he did have some difficulties while he was here. He had some rather serious heart problems and he was concerned about that and he was also concerned about staying close to his family for visitation purposes and things.

. . . .

Q. And did he initially have reservations or not want to enter into a guilty agreement because of the uncertainty associated with where he would serve the sentence?

A. I think he had some mixed feelings about it partly because he wasn't comfortable with entering a guilty plea at all but he was very concerned about where he could spend his time.

Q. Okay. Was he assured not only by you or did he hear anybody at the Sheriff's Department indicate to him that it wouldn't be a problem for him to serve that sentence here in the Cocke County Jail?

A. What I told him was that I had talked to someone in the Sheriff's Department and that it was my understanding that the Sheriff's Department personnel would choose who was sent when beds became available and that there were two situations that might lead to him being sent to the penitentiary. One was if he developed a medical condition that they couldn't deal with here and he couldn't be released, that that was a possibility. The second one was if he had disciplinary problems that he could be sent. But I had been assured that other than that, that he would not be scheduled to be sent and would not be if one of those two situations didn't develop.

. . . .

Q. Okay. And when was the last conversation you had with anybody except Mr. Carver about that issue as to where he was going to spend his time before the guilty plea was entered?

A. It would have been that morning.

Q. Okay.

A. Because that was really the key deciding factor I think to him. I think if he hadn't gotten that assurance he wouldn't have entered the plea.

. . . .

-3-

THE COURT: Okay, let me ask you this: you said to him apparently that he could or he would stay at the Cocke County Jail unless he had a disciplinary violation or he got sick and they couldn't handle it here in the county?

A. Those are the two things that we talked about. I wouldn't have said probably, I would have never said world without end. But I would have said these are the two things that would most likely trigger that.

. . . .

Q. Based on your experience up to that point, except for those two things you represented to him that he would stay in the Cocke County Jail unless one of those two things occurred?

A. Yes. And I told him that it would be up to the Sheriff's Department under any circumstances as to what his placement would be.

Q. So your advice to him, your discussion with him was unless the Sheriff's Department had a problem with him he would stay in the Cocke County Jail?

A. That's exactly right.

. . .

Q. And you told him that it would be up to the Sheriff's Department?

A. Yes.

. . . .

Q. And he knew that you had talked with the Sheriff's Department about that?

A. Yes.

Q. And that was the straw that broke the camel's back as far as him agreeing to plead guilty was assurance that he would stay here in the Cocke County Jail to serve his sentence?

A. Right.

. . . .

Q. Well, of course my question when we started this case was whether that was the deciding thing that morning that he agreed to take the plea agreement because he was satisfied that he was going to stay here.

A. I was satisfied that he was going to stay here.

Q. And that was the deciding factor in your opinion. .

A. Yes.

Q. . . in him taking the plea agreement?

A. Yes.

The petitioner testified he was assured he would stay in the Cocke County Jail and but for those assurances, he would not have pled guilty. The petitioner's daughter testified and confirmed his testimony.

We had the opportunity to address a similar claim by a petitioner in State v. Johnny E. Foster, No. 01C01-9510-CC-00342, 1996 Tenn. Crim. App. LEXIS 589 (Tenn. Crim. App. Sept. 30, 1996, at Nashville). The controlling factor in deciding both Foster and the instant case is the testimony given by trial counsel. In Foster, the trial counsel testified he repeatedly told his client that it would

be impossible under Tennessee law for a judge to sentence anyone to a ten-year prison term in the county jail. Whereas, in the instant case, trial counsel testified that the controlling factor in the petitioner's decision to plead guilty was where he would serve his sentence. Trial counsel attempted to assure the petitioner that unless he became sick or a discipline problem, he would serve his entire ten-year sentence in the Cocke County Jail.

Trial counsel's mistaken advice was not reasonably competent. One convicted of possession of a Schedule II drug (cocaine) with the intent to resell and ordered to serve a ten-year sentence in the Tennessee Department of Correction should not expect to serve his sentence in a county jail. Tennessee Code Annotated section 40-35-314(a) provides:

> If confinement is directed, the court shall designate the place of confinement as a local jail or workhouse if required pursuant to § 40-35-104(b) or, if the sentence is eight (8) years or less and combined with periodic or split confinement not to exceed one (1) year, the court shall designate the place of confinement as a local jail or workhouse. If confinement in a local jail or workhouse is not mandated by § 40-35-104(b), § 40-35-306 or § 40-35-307, all convicted felons sentenced after November 1, 1989, to continuous confinement for a period of one (1) year or more shall be sentenced to the department of correction. After November 1, 1989, if a court sentences or has sentenced a defendant to a local jail or workhouse when such court was not authorized to do so by this chapter, it shall be deemed that such sentence was a sentence to the department, and the commissioner of correction shall have the authority to take such a defendant into the custody of the department.

This code section clearly requires that any sentence of confinement over eight years is to be served in the Tennessee Department of Correction. Trial counsel believed and advised the petitioner that whoever is sent to the state penitentiary is within the discretion of the County Sheriff. This advice is not competent.

Tennessee Code Annotated section 40-23-103 states that "[i]t is the duty of the sheriff in whose custody the defendant is at the rendition of the judgment, or afterwards legally comes, to execute the judgment of imprisonment by committing the defendant, as soon as possible, to jail, or to the warden of the penitentiary, according to the exigency of the writ." This Court has interpreted "as soon as possible" to mean as soon as space is available at the penitentiary. See State v. David Wayne Walker and Neely Lenard Love, No. 02C01-9304-CC-00066, 02C01-9304-CC-00067, 1993 Tenn. Crim. App. LEXIS 723 (Tenn. Crim. App. Oct. 20, 1993, at Jackson). Therefore, in this case, we conclude that we are to interpret "as soon as possible" in its most literal sense.

Another troubling portion of trial counsel's testimony occurred when asked:
Q. Have you had other cases where that was an issue and where defendants entered plea agreements on the understanding they would stay here and it was not in the plea agreement or otherwise noted in writing?
A. Yes.

Agreements concerning plea bargains are made with the District Attorney's office and approved or rejected by the trial judge. Trial counsel should not make side agreements with third parties which serve as the cornerstone of the client's decision to enter a guilty plea, without disclosing such agreement to the District Attorney and the trial judge.

We are equally troubled by the trial counsel's performance in open court when the trial judge, at plea submission, asked the petitioner "if anybody had promised you anything other than what's been said in open court today." The petitioner answered, "No," and trial counsel did not respond. Here, trial counsel knew assurances had been given to the petitioner that he could serve his ten-year sentence in the Cocke County Jail and the assurances served as the key factor in his decision to enter a guilty plea.

Trial counsel's silence does not fulfill the obligation to fully advise the trial court of the terms of the plea bargain. As stated in Tennessee Criminal Practice and Procedure:

> [T]here is a very practical side to disclosure. To insure that a defendant's plea is voluntary the judge must distinguish between promises from others and promises that result from plea agreements. In addition, the judge must make a careful inquiry regarding the nature of the plea agreement so that the defendant may understand whether the judge will be "bound" by the plea agreement.

David Louis Raybin, Tennessee Practice: Criminal Practice and Procedure § 22.96 (Vol. 10, 1985) (footnotes omitted).

It is clear from this record that the trial judge was not bound and could not agree that the petitioner serve his entire ten-year sentence in the Cocke County jail. What is in the client's best interest is to plea bargain terms that are enforceable. By failing to disclose the side agreement or assurance, the court is not bound and the client is effectively denied the benefit of any bargain.

## Conclusion

Trial counsel gave incompetent advice to the petitioner that if he pled guilty he would serve his ten-year sentence in the Cocke County jail unless his medical condition worsened or he became a discipline problem. This assurance was the key factor in the petitioner's decision to plead guilty. We conclude that the incompetent advice renders the petitioner's guilty plea involuntary. We reverse the post-conviction court's denial of relief, allow the petitioner to withdraw his guilty plea, and remand for trial.

_____

JOHN EVERETT WILLIAMS, JUDGE